# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 6553 | **DATE** | 7/21/2000 |
| **CASE TITLE** | Gallagher Corporation etc. et al. Vs. Mass Mutual Life Ins. Co. etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons set forth above, Mass Mutual's motion for summary judgment is granted as to counts I, II and VII in their entirety, and granted in part and denied in part as to counts III-VI consistent with this opinion. Status hearing set for August 17, 2000 at 9:45am.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

JUL 2 4 2000

number of notices

date docketed

docketing deputy initials

**Document Number**

73

WAH  courtroom deputy's initials

00 JUL 21 AM10:47

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GALLAGHER CORPORATION, an Illinois corporation, individually and in its capacity as sponsor of the Gallagher Corporation Employee Defined Benefit Pension Plan, and RICHARD J. GALLAGHER, SR. and MARY I. GALLAGHER, individually and as Trustees of the Gallagher Corporation Employee Defined Benefit Pension Plan, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 95 C 6553 |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, a corporation, | ) ) ) ) | |
| Defendants. | ) | |

DOCKETED

JUL 2 4 2000

### MEMORANDUM OPINION AND ORDER

Plaintiffs Gallagher Corporation (Gallagher), Richard J. Gallagher, Sr. (Richard) and Mary I. Gallagher (Mary) (collectively "plaintiffs") bring this action against defendant Massachusetts Mutual Life Insurance Company (Mass Mutual) alleging violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and state common law. Mass Mutual moves for summary judgment with respect to all seven counts contained in plaintiffs' first amended complaint. For the reasons set forth below, Mass Mutual's motion is granted in part and denied in part.

### BACKGROUND

Gallagher is a closely-held corporation owned by Richard, Mary and their three children. In 1978, Richard met with Herb Schneider (Schneider), a Mass Mutual general agent located in Chicago, to discuss establishing a pension plan for Gallagher's officers and employees. Mass Mutual offered several prototype plans, and Gallagher selected Mass

Mutual's prototype for a split-funded defined benefit pension plan (the plan) to provide life insurance and retirement benefits for Gallagher's workforce. The plan was split-funded in that some plan assets were used to purchase life insurance policies for Gallagher employees while the remaining plan assets were invested in a side fund. As for the insurance component of the plan, Gallagher purchased whole life insurance policies from Mass Mutual. The plan assets invested in the side fund initially were placed with Shearson Lehman Brothers and later transferred to Pullman Bank & Trust Company. At all relevant times Richard and Mary were the trustees of the plan and Gallagher was the plan administrator.

In addition to the whole life insurance policies Gallagher also purchased certain plan-related services from Mass Mutual. Under ERISA, Gallagher was required to file annual reports with the Internal Revenue Service regarding the actuarial valuation of the plan. *See* 29 U.S.C. §§ 1023-24. From 1978 through the mid-1980s, Gallagher used Mass Mutual as its provider of actuarial services related to this filing requirement and also for certain plan-related recordkeeping services. Mass Mutual performed these services out of its home office in Springfield, Massachusetts. In the mid-1980s, however, Mass Mutual's home office ceased providing the recordkeeping and actuarial services for the plan. According to Mass Mutual, Gallagher was given the option of either choosing a service provider on its own or contracting with Professional Retirement Plans, Inc. (PRP), a third-party administrator established by Mass Mutual's general agent in Chicago, to perform plan-related services. Gallagher claims that it was not informed of the first option and that Richard was under the impression that PRP was simply a local Mass Mutual entity. In any event, Gallagher executed an agreement with PRP dated February 3, 1986, for plan-related services (def. exh. 1). PRP employed no actuaries and therefore Steven Russ (Russ) was retained to provide actuarial work for the

plan.

In 1992, Richard began contemplating his retirement from Gallagher and asked Russ to calculate his pension benefits. Russ informed Richard that he could not take his pension as a lump sum, an option allowed for under the plan, because the actuarial present value of the plan's liabilities exceeded that of its assets. In a meeting with Schneider and other Mass Mutual representatives on July 23, 1993, Richard was informed that he also could not terminate the plan at that time because it was underfunded by approximately $550,000. Upset by the diagnosis provided by Mass Mutual, Gallagher retained another actuary, Edward Costello (Costello), to examine the financial position of the plan. Costello agreed that the plan was underfunded (by $554,216 as of December 31, 1992), but blamed the deficiency on poor actuarial work performed by Mass Mutual and Russ over the previous several years.

Although Richard was not able to draw benefits or terminate the plan when he desired to do so, the plan's financial health eventually improved. In 1994, Gallagher surrendered the Mass Mutual whole life insurance policies held pursuant to the plan, receiving into the side fund the policies' cash surrender value of approximately $216,000. The plan then purchased term life insurance policies for its employees from another insurance company. By 1998, the plan's assets exceeded its liabilities such that both Richard and Mary have been able to retire and take lump sum benefits from the plan.

Plaintiffs filed this lawsuit against Mass Mutual on November 13, 1995, essentially alleging that Mass Mutual had negligently mismanaged the plan into a deficit position. Plaintiffs' first amended complaint sets out seven causes of action. Counts I-IV are brought on behalf of Gallagher as the plan sponsor, and Richard and Mary as the plan trustees. Count I alleges that Mass Mutual breached its fiduciary duties under ERISA, 29 U.S.C. §§ 1104,

1109.  Count II alleges that Mass Mutual engaged in self-dealing, a prohibited transaction under ERISA, 29 U.S.C. § 1106(b)(1).  Count III alleges negligence and Count IV alleges negligent misrepresentation, both brought under state common law.  Counts V and VI also allege common law negligence and negligent misrepresentation, but on behalf of Gallagher individually and not in its capacity as the plan sponsor.  Finally, Count VII alleges a violation of ERISA and is brought on behalf of Richard and Mary as individual participants of the plan.  Mass Mutual now seeks summary judgment in its favor on all seven counts, advancing a number of arguments in support of its motion.  As explained below, we agree with some of Mass Mutual's arguments and disagree with others.

## DISCUSSION

### I. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In considering a motion for summary judgment a court must "construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir. 1998); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A genuine issue of material fact exists if there is sufficient evidence for a reasonable factfinder to decide the issue in favor of the non-moving party on the particular issue.  Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).  The "mere existence of some alleged factual dispute between the parties," however, will not defeat summary judgment.  Anderson, 477 U.S. at 247.

## II. ERISA Claims

In order to succeed on its three ERISA-based claims – Counts I, II and VII – plaintiffs must first establish that Mass Mutual was a fiduciary within the meaning of the federal statute. Under our reading of the complaint, Counts I and VII are brought pursuant to Sections 404 and 409 of ERISA, 29 U.S.C. §§ 1104, 1109. Both of these sections are applicable only to actions against fiduciaries. *See* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries..."); 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan ... shall be personally liable ..."). The same is true for Section 406 of ERISA, the basis of Count II. *See* 29 U.S.C. § 1106(b)(1) ("A fiduciary with respect to a plan shall not ... deal with the assets of the plan in his own interest or for his own account"). Therefore, plaintiffs cannot recover under ERISA unless Mass Mutual is a fiduciary of the plan.

ERISA defines the term "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Supreme Court recently summarized this definition: "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial advisor to a 'plan.'" Pegram v. Herdrich, 120 S.Ct. 2143, 2151 (2000). The test is a functional one, Mertens v. Hewitt Associates, 508 U.S. 248, 262 (1993), with the focus on whether and to what degree a person exercises discretionary authority over an ERISA plan. *See* Schmidt v. Sheet Metal Workers' National Pension Fund, 128 F.3d 541,

547 (7th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998); <u>Pohl v. National Benefits Consultants,</u> <u>Inc.</u>, 956 F.2d 126, 129 (7th Cir. 1992) ("ERISA makes the existence of discretion a *sine qua non* of fiduciary duty.").  Furthermore, as the statutory definition states, a person is a fiduciary only "to the extent" that he or she performs one of the fiduciary-creating functions listed in 29 U.S.C. § 1002(21)(A).  That is, a person may be a fiduciary for some purposes, but not for others. <u>Klosterman v. Western General Management, Inc.</u>, 32 F.3d 1119, 1122 (7th Cir. 1994). Therefore, in assessing liability for breach of fiduciary duty, a court must ask whether a person is a fiduciary with respect to the particular misconduct at issue. *See* <u>Plumb v. Fluid</u> <u>Pump Service, Inc.</u>, 124 F.3d 849, 854 (7th Cir. 1997).

In Counts I, II and VII of the complaint, plaintiffs allege that Mass Mutual became an ERISA fiduciary by exercising discretionary authority over a wide variety of activity related to the management and administration of the plan.  Plaintiffs' allegations can be organized into six categories of purported misconduct on the part of Mass Mutual, loosely described as selling whole life insurance policies, controlling plan assets, poorly administering the plan, performing faulty actuarial work, recommending salary increases, and paying excessive premiums and commissions.  We must examine Mass Mutual's involvement in each of these areas of activity to determine whether it exercised discretionary authority in the performance of that activity and thereby acquired fiduciary status under ERISA.

## A. <u>Selling Whole Life Insurance Policies</u>

Recall that after selecting Mass Mutual's prototype and establishing the plan, Gallagher purchased whole life insurance policies from Mass Mutual for the insurance component of the plan.  Plaintiffs claim that they were forced into this decision by Mass Mutual, to their detriment.  In support of this claim plaintiffs suggest that Mass Mutual's

prototype plan required that Gallagher purchase insurance policies only from Mass Mutual (plf. 12(M) resp. at ¶ 17). Indeed, plaintiffs assert that the only reason Mass Mutual offers prototype plans is so that it can market its life insurance policies (plf. 12(N) at ¶¶ 2, 18). Plaintiffs also contend that when Schneider and Richard met in 1978 to establish the plan, Schneider did not offer insurance from any company other than Mass Mutual (plf. 12(M) resp. at ¶ 17). Furthermore, plaintiffs claim that Schneider advised Richard to buy whole life insurance policies rather than term life policies for the plan (plf. 12(N) at ¶ 19). According to plaintiffs, term life policies would have been less expensive and may have saved the plan from its financial demise (plf. 12(N) at ¶ 14). Based on these factual allegations, plaintiffs argue that Mass Mutual exercised discretionary authority over the plan's purchase of insurance products, triggering fiduciary responsibilities under ERISA.

Initially, plaintiffs overstate their case when they characterize the prototype plan as requiring the purchase of Mass Mutual's insurance policies. The provisions of the prototype plan upon which plaintiffs rely for this argument merely state that the plan trustee must purchase life insurance from the "Insurer," which it defines as "[Mass Mutual] or any other legal reserve life insurance company authorized to do business in this state"(plf. exh. A at ¶¶ 1.18, 7.1). The prototype plan clearly does not require that Mass Mutual be the exclusive insurer for the plan. Plaintiffs other allegations regarding Mass Mutual's role in selling insurance to the plan simply describe a scenario in which an agent of Mass Mutual urged Gallagher to purchase Mass Mutual's whole life insurance product for the plan. This behavior does not confer fiduciary status on Mass Mutual. "Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products." American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance

Soc. of the U.S., 841 F.2d 658, 664 (5th Cir. 1988); *see* Farm King Supply, Inc. v. Edward D. Jones & Co., 884 F.2d 288, 294 (7th Cir. 1989). Mass Mutual marketed itself to Gallagher and advised Gallagher to select whole life insurance rather than term life insurance, but Mass Mutual had no control over which insurer and which insurance product Gallagher ultimately chose for the plan. Those decisions were made by Gallagher. Mass Mutual's role in persuading Gallagher to select Mass Mutual's whole life insurance policies does not amount to an exercise of discretionary authority and therefore does not render Mass Mutual an ERISA fiduciary with respect to those activities. *See* Schulist v. Blue Cross of Iowa, 717 F.2d 1127, 1131-32 (7th Cir. 1983) (insurer who urged purchase of its services was not an ERISA fiduciary); *see also* Klosterman, 32 F.3d at 1122-23 (party who encouraged use of a particular insurer not an ERISA fiduciary).

B. Controlling Plan Assets

Plaintiffs next argue that Mass Mutual controlled plan assets and thereby came within ERISA's definition of a fiduciary. *See* 29 U.S.C. § 1002(21)(A)(i). Specifically, plaintiffs emphasize the fact that Mass Mutual's whole life insurance policies paid dividends and accumulated cash surrender values (plf. 12(N) at ¶¶ 8-10). The dividends and cash surrender values were not distributed to plan participants until the policies were surrendered (*id.*) In the meantime, Mass Mutual was in control of the funds (*id.*) Plaintiffs argue that Mass Mutual's control over the dividends and accumulated cash surrender values of the policies make it an ERISA fiduciary.

These allegations do not support plaintiffs' breach of fiduciary duty claims. Plaintiffs do not allege, either in their complaint or in their brief, that Mass Mutual mismanaged the life insurance policies' dividends and cash surrender values. Therefore, even if Mass Mutual had

control over those funds and therefore acted as an ERISA fiduciary with respect to managing those funds, its status as a fiduciary on that issue is unrelated to any misconduct alleged by plaintiffs. *See* <u>Meeks v. United Air Cleaner Co., Inc.</u>, 1997 WL 460961, at *2 (N.D. Ill. Aug. 11. 1997) (holding that an ERISA defendant was not liable for breach of fiduciary duty where he was a fiduciary with respect to activities unrelated to any alleged misconduct). That Mass Mutual is a fiduciary for some purposes does not render it a fiduciary for all purposes. <u>Klosterman</u>, 32 F.3d at 1122. In order to be held liable for a breach of fiduciary duty, Mass Mutual must be a fiduciary with respect to the specific misconduct at issue. As for the management of the policies' dividends and cash surrender values, Mass Mutual may have been a fiduciary but plaintiffs have not alleged any wrongdoing related to that conduct.

## C. <u>Administering the Plan</u>

Plaintiffs next contend that Mass Mutual exercised discretionary authority over administering certain aspects of the plan. Primarily, plaintiffs assert that Mass Mutual engaged in plan administration when it unilaterally transferred the plan-related servicing work to PRP in the mid-1980s. Plaintiffs claim that Gallagher was not informed of its options before Mass Mutual transferred the work to PRP and, similarly, that Mass Mutual retained Russ as the plan's actuary and set his compensation without consulting Gallagher (plf. 12(M) resp. at ¶¶ 35-40; plf. 12(N) at ¶ 33). Furthermore, plaintiffs complain that Russ reported directly to Mass Mutual rather than to Gallagher (plf. 12(N) at ¶ 36). Plaintiffs conclude that by unilaterally transferring the recordkeeping and actuarial work to PRP and Russ, Mass Mutual exercised discretionary authority over administration of the plan.

For the first several years of the plan, Mass Mutual performed recordkeeping and actuarial services for Gallagher. Mass Mutual did not acquire fiduciary standing as a result

of providing recordkeeping services. *See* <u>Schmidt</u>, 128 F.3d at 547 (performance of ministerial and clerical functions relating to plan administration does not confer fiduciary status); <u>Pohl</u>, 956 F.2d at 129 (same). And, as discussed below, Mass Mutual did not become an ERISA fiduciary by virtue of performing actuarial work. *See* <u>Pappas v. Buck Consultants, Inc.</u>, 923 F.2d 531, 535-37 (7th Cir. 1991). The transfer of these services to PRP and Russ similarly did not amount to an exercise of discretionary authority on the part of Mass Mutual.[1] On February 3, 1986, Richard executed an agreement authorizing PRP to perform plan-related services (def. exh. 1). At the very least, Richard was at that time aware that PRP would be performing the plan-servicing work formerly provided by Mass Mutual's home office (Gallagher dep. at 56-64). This evidence indicates that the decision to transfer the plan-servicing work was not a unilateral one. Indeed, Gallagher signed off on the transfer. Mass Mutual may have urged Gallagher to select PRP for recordkeeping services and hire Russ for plan-related actuarial work, but such behavior does not qualify as an exercise of discretionary authority. *See* <u>Klosterman</u>, 32 F.3d at 1122-23; <u>Schulist</u>, 717 F.2d at 1131-32. Contrary to plaintiffs' assertions, Mass Mutual was not a fiduciary with respect to administering the plan.

## D. <u>Performing Actuarial Work</u>

Plaintiffs find considerable fault with the actuarial work completed by Mass Mutual and Russ. In support of this contention, plaintiffs rely chiefly on the testimony of their expert, Costello, who opines that the actuaries made many unreasonable assumptions and employed a number of faulty methods with respect to the plan. For example, Costello asserts that Mass

---

[1]As a preliminary matter, we are not certain that plaintiffs have placed the transfer of plan-related services at issue in their complaint. The pleadings are devoid of any allegations that Mass Mutual acted negligently or otherwise misbehaved in transferring the plan-servicing work to PRP and Russ. These accusations therefore teeter on the edge of the same pitfalls that proved fatal to plaintiffs' argument regarding Mass Mutual's control of plan assets. *See* Part I.B; <u>Meeks</u>, 1997 WL 460961, at *2.

Mutual and Russ should have provided for future salary increases and used different mortality tables when making their actuarial assumptions. Moreover, he blames Mass Mutual and Russ for failing to adjust their actuarial assumptions and methods to comport with the experiences of the plan over time (def. exh. 99).

These allegations do not assist plaintiffs with their ERISA-based claims because, as a matter of law, actuaries are not fiduciaries under ERISA. Pappas, 923 F.2d at 535-37; see Mertens v. Hewitt Associates, 948 F.2d 607, 610-11 (9th Cir. 1991), aff'd, 508 U.S. 248 (1993). Therefore, insofar as Mass Mutual completed actuarial work for the plan, it is not a fiduciary. Pappas, 923 F.2d at 535-37. Russ does not qualify as an ERISA fiduciary for the same reasons.[2] An actuary may become an ERISA fiduciary by performing services above and beyond his professional duties. Pappas, 923 F.2d at 538. But plaintiffs make no such allegations or arguments here. At most, plaintiffs claim that, in addition to performing faulty actuarial work, Mass Mutual and Russ provided poor recordkeeping services, failed to disclose their actuarial methods and assumptions to Gallagher, and concealed the underfunded position of the plan (plf. 12(M) resp. at ¶¶ 22, 28-30). These contentions are contradicted by other evidence in the record (def. 12(M) at ¶¶ 25-31, 45), and, in any event, are not enough to transform the actuaries into fiduciaries. See Pohl, 956 F.2d at 129; Pappas, 923 F.2d at 537-38. Like the Seventh Circuit in Pappazs, we find that plaintiffs have alleged "nothing more than that defendants [negligently performed] their usual professional functions" as actuaries (id.

---

[2]Plaintiffs argue that Russ was an agent of Mass Mutual such that his conduct is attributable to Mass Mutual. Plaintiffs make similar agency arguments at other points in their brief. While this issue may affect plaintiffs' common law tort claims, it has no bearing on the ERISA-based causes of action. The question here is whether Mass Mutual is a fiduciary under ERISA. Even if Russ qualifies as an agent of Mass Mutual, he acted only as an actuary and therefore his conduct does not morph Mass Mutual into an ERISA fiduciary. See Pappas, 923 F.2d at 535-37. Similarly, the recordkeeping work done by PRP was not fiduciary-conferring conduct (see Pohl, 956 F.2d at 129), even if attributable to Mass Mutual.

at 538 (quotations omitted)). Neither Mass Mutual nor Russ became ERISA fiduciaries by virtue of their actuarial work.

E. Recommending Salary Increases

Plaintiffs next accuse Mass Mutual of recommending certain salary increases which proved detrimental to the plan. In 1987, Richard decided to increase the salaries of some of his family members who worked for Gallagher. Since pension benefits under the plan were based on a participant's average compensation, this salary increase had the effect of increasing the future benefits of some family members. Richard was aware of the way the plan worked and, beginning in 1987, increased Mary's compensation specifically for the purpose of enhancing her future pension benefits under the plan (Richard dep. at 76-80). Richard informed Schneider and others at Mass Mutual of the raises, but plaintiffs admit that no representative of Mass Mutual directly recommended that Richard increase salaries (Richard dep. at 76-80, 252). While the salary increases enhanced future benefits, it also had the effect of diminishing the actuarial value of the plan, exacerbating its financial woes.

Plaintiffs now blame Mass Mutual for these ill-advised salary increases. First, plaintiffs note that Mass Mutual benefitted from the salary increases because it received higher insurance premiums as a result of the raises. That Mass Mutual benefitted from Richard's decision to raise salaries at Gallagher, however, does not make it an ERISA fiduciary. Second, plaintiffs point out that Schneider told Richard that higher salaries would translate into higher benefits and that Mary should share in any salary increase enacted by Gallagher (Richard dep. at 76-80; Schneider dep. at 87). But Richard also testified that he fully understood that the raises would result in higher future benefits, stating that he "didn't need [Schneider] to tell me that" (Richard dep. at 79). Finally, plaintiffs argue that Mass Mutual was aware of the salary

increases but failed to make the actuarial adjustments necessary to calibrate contributions in light of the raises and thereby maintain the plan's financial viability. This is simply a claim of negligent actuarial work, not breach of fiduciary duty. *See* Pappas, 923 F.2d at 538. The record indicates that Richard, and not Mass Mutual, made the decision to increase salaries. Mass Mutual did not exercise discretionary authority with respect to the salary increases and therefore is not an ERISA fiduciary in connection with that event.

## F. Paying Commissions and Premiums

Finally, plaintiffs claim that excessive commissions and premiums were paid to Mass Mutual and its agents during the life of the plan. This allegation relates to plaintiffs' assertion that Mass Mutual forced the plan to purchase whole life insurance policies rather than less expensive term life insurance policies. The upshot of selecting more expensive whole life policies, plaintiffs say, was that Mass Mutual was able to extract higher premiums from plan participants and pay excessive commissions to Schneider and other Mass Mutual agents. Even if true, this conduct does not render Mass Mutual an ERISA fiduciary. Citing Schulist, 717 F.2d at 1131-32, we explained above that Mass Mutual did not exercise discretionary authority by urging the plan to purchase whole life insurance policies from Mass Mutual. (*See* Part I.A). Like Mass Mutual, the defendant in Schulist was an insurance company accused of forcing plan trustees to purchase an insurance product with excessively high premiums. But in Schulist, as in this case, it was the plan trustees and not the insurance company who ultimately decided which insurance product to purchase for the plan and from whom. The Seventh Circuit held that the insurance company did not exercise discretionary authority over the trustees even if it urged them to purchase a bad insurance product with inordinately high premiums. Schulist, 717 F.2d at 1131-32. In short, plaintiffs are upset that they purchased

expensive insurance to their detriment and Mass Mutual's benefit. But the alleged receipt of excessive premiums and payment of high commissions does not transform Mass Mutual into an ERISA fiduciary.

Concluding our discussion of the ERISA-based claims, we hold that plaintiffs have failed to show that Mass Mutual exercised discretionary authority with respect to any allegedly offensive activity. Certainly, Mass Mutual was involved with the plan to some extent. And, as to certain functions, it may even have become a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A). But Mass Mutual was not an ERISA fiduciary with respect to any misconduct alleged in the complaint and therefore cannot be held liable under plaintiffs' ERISA-based causes of action. Accordingly, we grant summary judgment in favor of Mass Mutual as to Counts I, II, and VII.[3]

## III. State Law Claims

Plaintiffs' remaining claims arise under state common law.[4] As described above, Counts III and IV allege negligence and negligent misrepresentation on behalf of the plan, and Counts V and VI allege the same two claims on behalf of Gallagher in its individual capacity. It makes no difference for our purposes here whether a claim is brought by the plan or by Gallagher. Therefore, for simplicity's sake, we will treat the state law allegations as accusing Mass Mutual of two torts: negligence (Counts III and VI) and negligent misrepresentation (Counts IV and V).

---

[3]Because we dispose of plaintiffs' ERISA claims on the fiduciary issue, we need not address Mass Mutual's other arguments against Counts I, II, and VII (*i.e.*, lack of expert testimony and expiration of statute of limitations). The state law claims remain before the court by virtue of diversity jurisdiction.

[4]Closing an issue we left open in our prior order in this case, Gallagher Corp. v. Massachusetts Mutual Life Ins. Co., 940 F. Supp. 176, 182 (N.D. Ill. 1996), we hold that since Mass Mutual is not liable under ERISA, plaintiffs' state law claims are not preempted.

## A. Negligence

Plaintiffs' negligence cause of action is based on some of the same alleged misconduct that formed the bases of its ERISA-based claims. We will therefore summarize the negligence claim without recounting all of the underlying details: plaintiffs assert that Mass Mutual owed a professional standard of care to plaintiffs which it breached by selling whole life insurance policies, recommending salary increases, and performing faulty actuarial work[5] (Cplt. at ¶ 10). Plaintiffs claim that they learned of Mass Mutual's negligent conduct in August 1993, around the time Richard discovered that he could not terminate the plan because it was underfunded. Mass Mutual contests the negligence charge primarily on statute of limitations grounds, and also contends that certain portions of the negligence cause of action fail for lack of expert testimony and insufficient factual support.

Both parties agree that the negligence claim is governed by 735 ILCS 5/13-205, under which a claim is time-barred unless it is filed within five years after the cause of action accrued. A cause of action accrues when the plaintiff knows or reasonably should have known of the injury and that the injury was wrongfully caused. See Hermitage Corp. v. Contractors Adjustment Co., 651 N.E.2d 1132, 1135-36 (Ill. 1995); Knox College v. Celotex Corp., 430 N.E.2d 976, 979-980 (Ill. 1981). Mass Mutual argues that plaintiffs knew of the allegedly negligent conduct more than five years prior to filing this lawsuit on November 13, 1995. Mass Mutual addresses each category of conduct in turn, and so shall we. Mass Mutual first points

---

[5]We again encounter the agency question first introduced in the ERISA discussion above. See, supra, n.2. Plaintiffs' negligence claim is based in part on the plan-related work performed by PRP and Russ, which plaintiffs argue is attributable to Mass Mutual on an agency theory. Mass Mutual does not contest this theory in its summary judgment motion (def. br. at 13-14 n.6), so we will assume that a question of fact exists as to whether PRP and Russ were agents of Mass Mutual and therefore approach the negligence claim under the premise that negligence on the part of PRP or Russ means negligence on the part of Mass Mutual.

out that the sale of whole life insurance policies took place in 1978, too long ago to constitute actionable negligence. Plaintiffs respond that although they knew what they were buying in 1978, they did not discover the injurious effect of the whole life insurance policies until August 1993. *See* Hermitage, 651 N.E.2d at 1135-36 (describing Illinois' discovery rule). Plaintiffs' argument is unpersuasive. The injury plaintiffs complain of is that the whole life insurance policies turned out to be too expensive for the plan. But plaintiffs were aware in 1978 of the nature of whole life insurance and of the premium rates charged by Mass Mutual. Although plaintiffs contend that Mass Mutual did not offer to sell them a term life product (plf. 12(N) at ¶ 19), plaintiffs should have known at that time that other insurance products, some of them less expensive, were available on the market. Thus, plaintiffs knew of their alleged injury: expensive insurance, and the cause of the injury: whole life policies, in 1978. Therefore, plaintiffs' negligence claim is time-barred insofar as it is based on the sale of insurance.[6]

As for the salary increases, Mass Mutual argues that since Richard obviously had knowledge of those raises when he enacted them in 1987, the filing period as to that conduct expired in 1992. Plaintiffs argue that although they knew of the fact of the raises as early as 1987, they did not learn of the negative impact of those raises until August 1993.[7] Again, Mass Mutual gets the better of the argument. Richard testified that he fully understood the ramifications of the salary increases when he instituted the raises in 1987 (Richard dep. at 76-80). Specifically, Richard testified that he was familiar with how the plan worked and was

---

[6]Since this part of plaintiffs' negligence claim is time-barred, we need not address Mass Mutual's contention that it is also defeated by the lack of expert testimony.

[7]Plaintiffs also reassert that they are not complaining about the salary increases so much as Mass Mutual's failure to alter contributions to the plan in light of the raises. This contention simply is another way of criticizing Mass Mutual for failing to adjust actuarial assumptions after the salary increases were implemented and therefore falls into the category of allegations regarding the actuarial work.

aware that the raises would alter the financial position of the plan by increasing future benefits owed to the more highly-paid workers (Richard dep. at 76-80). Thus, plaintiffs had notice in 1987 that the salary increases might diminish the present value of the plan. To the extent plaintiffs allege negligence based on the salary increases, that claim is time-barred.[8]

Finally, we turn to the allegations regarding the actuarial services. Plaintiffs identify three alleged deficiencies with Mass Mutual's actuarial work: use of a zero increase salary assumption, adoption of an inappropriate cost method for plan year 1988, and use of an outdated mortality table for plan years 1988 through 1992. Mass Mutual argues that it sent an IRS filing to plaintiffs on May 23, 1988, which disclosed the assumptions, methods, and tables used by Mass Mutual for the 1987 plan year (def. 12(M) at ¶¶ 25-31; def. exh. 54). Since Richard signed that and all subsequent IRS filings, Mass Mutual claims that plaintiffs were apprised of the allegedly faulty actuarial work on an annual basis and at least as early as 1988. Furthermore, Mass Mutual points out that Richard signed a document on September 21, 1989, approving the change in the cost method for the 1988 plan year (def. exh. 31). Based on these facts, Mass Mutual argues that plaintiffs' negligence claim regarding the actuarial work accrued more than five years prior to the filing of this lawsuit and therefore is time-barred.

This time we disagree with Mass Mutual. Plaintiffs argue that although they may have known about the raw facts (*i.e.*, that certain actuarial assumptions, methods, and tables were used), they did not discover that the plan had been injured as a result until August 1993. Plaintiffs, as non-actuaries, were not in a position to understand the potentially injurious

---

[8]A question of fact may well exist with respect to whether Mass Mutual even recommended the salary increases in the first place. As we discussed above, the record indicates that Richard may have decided to implement the raises on his own (def. 12(M) and plf. 12(M) resp., ¶¶ 42-44). We need not address this issue, however, since we have dismissed the salary increase component of plaintiffs' negligence claim on statute of limitations grounds.

ramifications of using certain actuarial assumptions and methods.[9] Indeed, both parties have turned to experts in order to assess the soundness of the actuarial work performed by Mass Mutual in this case. Plaintiffs could not have foretold the impact of the actuarial devices used by Mass Mutual when the parties now require expert testimony in order to assess the soundness of the actuarial work. Moreover, plaintiffs relied on Mass Mutual to advise them regarding the appropriateness of the actuarial assumptions and methods applied to the plan (plf. 12(N) at ¶¶ 31, 36). Plaintiffs claim that, in dereliction of this trust, Mass Mutual continually informed them that nothing was wrong with the plan's financial well-being[10] (plf. 12(N) at ¶ 56). Plaintiffs first learned that the actuarial work may have been deficient in August 1993, when Richard discovered that the plan was in a deficit position and could not be terminated. Therefore, plaintiffs' negligence claim is not time-barred with respect to the allegedly faulty actuarial work performed by Mass Mutual.

Two other points regarding the statute of limitations issue merit discussion. First, plaintiffs argue that 735 ILCS 5/13-207 operates to save its negligence claim from being time-barred. That provision of the Illinois Code of Civil Procedure enables a defendant to file an otherwise untimely counterclaim in certain circumstances. Plaintiffs contend that their amended complaint, filed October 1, 1997, constituted a counterclaim to the third party complaint filed by Mass Mutual against Richard and Mary on August 6, 1997, and therefore the state law claims contained in the amended complaint are saved by Section 13-207. Plaintiffs misapply Section 13-207. *See* Cameron General Corp. v. Hafnia Holdings, Inc., 683

---

[9]In contrast, plaintiffs were well aware of the expensive nature of whole life policies and of the impact on future benefits of salary increases.

[10]Plaintiffs further contend that the annual IRS filings sent to Richard by Mass Mutual did not clearly indicate that the plan was in a deficit position.

N.E.2d 1231, 1238-40 (Ill. App. 1 Dist. 1997) (describing nature and purpose of Section 13-207). Moreover, plaintiffs' argument fails in that their amended complaint cannot be construed as a counterclaim to Mass Mutual's third party complaint, especially since plaintiffs answered the third party complaint without raising any counterclaims. In any event, the only new claim added in plaintiffs' amended complaint was the individual ERISA action brought by Richard and Mary (Count VII), and we have already dismissed that count on independent grounds.

Second, plaintiffs attempt to invoke the continuing tort doctrine whereby the statute of limitations is not triggered until the date of the last act of an injurious course of conduct. *See* Hyon Waste Management Services, Inc. v. City of Chicago, 574 N.E.2d 129, 132-33 (Ill. App. 1 Dist.), *appeal denied*, 580 N.E.2d 115 (Ill. 1991). They argue that "in failing to use proper actuarial assumptions, and in failing to correct the incorrect assumptions in light of the Plan's experience," Mass Mutual engaged in a single course of negligent conduct (plf. br. at 20). Even if these acts constitute a single course of conduct, however, we have already held that the allegations regarding the actuarial work are not time-barred and therefore plaintiffs' argument is moot. Furthermore, as to the contention that the sale of insurance and the salary increases are also part of the same course of conduct, an argument not expressly made in plaintiffs' brief, we disagree. Those acts were distinct from each other and from the actuarial work. Plaintiffs argue that the negligent course of conduct took place "from 1988 until August 1993." (plf. br. at 20). This encompasses the actuarial work performed by Russ, but not the sale of whole life policies by Schneider in 1978 nor the (purported) recommendation of salary increases in 1987. The continuing tort doctrine does not alter our conclusions.

To summarize, the negligence claims, Counts III and VI, are time-barred insofar as they are based on the sale of insurance and the salary increases. The allegations regarding the

actuarial work, however, did not accrue until August 1993 and therefore are timely.

## B. Negligent Misrepresentation

The negligent misrepresentation claim, embodied in Counts IV and V, is based on the same alleged misconduct underlying the negligence cause of action: selling whole life insurance policies, recommending salary increases, and performing faulty actuarial work. This claim is also subject to the five-year limitations period prescribed in 735 ILCS 5/13-205. *See* Ko v. Eljer Industries, Inc., 678 N.E.2d 641, 646 (Ill. App. 1 Dist. 1997). Since it is based on the same alleged wrongdoing, the negligent misrepresentation claim suffers from the same maladies that afflict the negligence cause of action. For the reasons discussed above, therefore, the negligent misrepresentation claim is time-barred insofar as it is based on the sale of insurance[11] and the salary increases. The allegedly negligent misrepresentations related to the actuarial work, however, are not time-barred and constitute actionable misconduct.

## IV. Damages

The above analysis has reduced this lawsuit to its essence, a claim of negligent actuarial work.[12] Mass Mutual attempts to finish off the remaining elements of the action by arguing that plaintiffs have not been damaged by the allegedly negligent actuarial work. But plaintiffs have succeeded in raising an issue of fact regarding damages in a number of respects. Plaintiffs' expert, Costello, testified that the actuarial malfeasance placed the plan in a deficit position and cost Gallagher investment earnings amounting to over $404,000 (plf. 12(N) at ¶

---

[11]Our resolution of this claim on timeliness grounds renders irrelevant Mass Mutual's alternative argument that it is not liable for negligent misrepresentation in connection with the sale of whole life insurance policies because it is not in the business of supplying information. *See* Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 452 (Ill. 1982).

[12]Indeed, Gallagher and the plan presently are pursuing a state court action alleging actuarial negligence against Russ. *See* Gallagher Corp. v. Russ, 721 N.E.2d 605 (Ill. App. 1 Dist. 1999).

49). Plaintiffs also assert that, because of the actuarial mistakes, they paid excess premiums (*id.* at ¶ 54), and allocated nonrefundable funds into a profit-sharing account rather than the plan (<u>id.</u> at ¶¶ 50-53). Mass Mutual ripostes that these damages figures are all based on the $550,000 deficit in the plan at year-end 1992, and that plaintiffs' expert cannot specifically identify what amount of that deficit was due to faulty actuarial work. This is not entirely true. Costello testified that the deficit was caused by the use of several unreasonable actuarial assumptions operating in the aggregate (Costello dep. at 140, 198-99; def. exh. 99). This is sufficient to raise a question of fact regarding whether the actuarial work caused damages to the plan. *See* <u>O.T. Food & Liquor v. Hartford Ins. Co.</u>, 1996 WL 131805, at *4 (N.D. Ill. Mar. 21, 1996) (commenting that under Illinois law assessment of damages is primarily a question of fact for the jury). Furthermore, a question of fact also exists with regard to whether plaintiffs lost money by contributing to the profit-sharing account rather than the plan over the course of several years.

The plan is currently in a surplus position. However, this was not always the case. At year end 1992, the plan was underfunded to such an extent that Gallagher was forced to make additional contributions totaling $690,000 in order to resuscitate the plan by 1998 (plf. 12(N) at ¶ 47). The underfunded position of the plan at year-end 1992 affected Richard's retirement plans and may have caused significant financial damage to plaintiffs. Plaintiffs may have allocated their funds differently, made greater investment income and paid lower premiums but for the alleged actuarial negligence. On this record we find that a question of fact exists regarding damages.

## CONCLUSION

For the reasons set forth above, Mass Mutual's motion for summary judgment is granted as to Counts I, II and VII in their entirety, and granted in part and denied in part as to Counts III-VI consistent with this opinion.


_____
JAMES B. MORAN
Senior Judge, U. S. District Court

_____ , 2000.